UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY CRANE,

        Plaintiff,

Case No. 1:18-cv-227

Hon. Paul L. Maloney

v.

ERIC SMITH, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Timothy Crane, a state prisoner at a Michigan Department of Corrections (MDOC) facility. This matter is now before the Court on defendants' motion for summary judgment based on failure to exhaust (ECF No. 23).

    **I.**    **Plaintiff's Complaint**

Plaintiff's claims arose out of incidents occurring in May and June 2017 at the Oaks Correctional Facility (ECF). Plaintiff sues five MDOC employees in their individual and official capacities: Acting Deputy Warden Eric Smith, Assistant Residential Unit Supervisor (ARUS) Patrick Miseta, Residential Unit Manager (RUM) Kevin Smiley, Psychologist Aimee Mucha, and Registered Nurse (RN) Jack Bellinger. Compl. (ECF No. 1, PageID.1-2). Plaintiff alleged that defendants Smith, Miseta and Smiley denied him sanction breaks and that defendants Mucha and Bellinger were deliberately indifferent to his serious medical needs.

1

### A. Sanction Breaks

In Counts 1 through 4, plaintiff alleged that defendants Smith, Miseta and Smiley failed to provide him with a sanction break every 30 days pursuant to MDOC Policy Directive 03.03.105 ("Prisoner Discipline") which provides that:

> A prisoner serving a sanction of detention, toplock, loss of privileges, or any combination of these sanctions, shall not be deprived of yard for more than 30 consecutive days without being provided a seven-day break during which the prisoner shall be given the opportunity for yard consistent with his/her status (i.e., one hour per day in general population; one hour per day, five days per week, in segregation). However, yard privileges for all segregation prisoners are subject to restriction by written order of the Warden or Deputy Warden as set forth in PD 04.05.120 "Segregation Standards".

PD 03.03.105 ¶ QQQ (eff. 04/09/12).[1]

In Count 1, plaintiff claims that Acting Deputy Warden Smith violated his 14th Amendment due process rights by failing to correct or modify his "illegally entered" sanction dates to allow him an adequate amount of outside exercise time under MDOC Policy Directive 03.03.105. Plaintiff alleged that both the policy and defendant Smith's actions violated his due process rights. PageID.11. In Count 2, plaintiff alleged that defendant Smith inflicted cruel and unusual punishment in violation of the 8th Amendment and violated his due process rights under the 14th Amendment because he knew that the disciplinary sanctions caused plaintiff physical and mental injury. *Id.* In Count 3, plaintiff alleged that defendant ARUS Miseta engaged in cruel and unusual punishment in violation of the 8th Amendment "where defendant refused to provide plaintiff with [adequate] time for exercise outdoors for several months (sanction break)[.]" *Id.* In Count 4, plaintiff alleged that defendant RUM Smiley engaged in cruel and unusual punishment

---

[1] The Court notes that PD 03.03.105 was revised as of July 1, 2018.

2

in violation of the 8th Amendment "where defendant refused to provide plaintiff with [adequate] time for exercise outdoors for several months via sanction break." *Id.*

### B.     Medical treatment

In Count 5, plaintiff alleged that defendant psychologist Mucha acted with deliberate indifference to plaintiff's serious mental health needs in violation of his 8th Amendment rights,

> where she had knowledge of the risk Plaintiff posed to himself and yet failed to take reasonable precautions to prevent plaintiff from attempting suicide multiple times. It was unreasonable for Defendant Mucha to fail to report and or address the ongoing abuse Plaintiff was enduring and reporting to her concerning the lack of outside physical activity.

*Id.* at PageID.12. Finally, in Count 6, plaintiff alleged that RN Bellinger "failed to treat Plaintiff's high blood pressure, [muscular] dystrophy, [migraines], and failed to refer plaintiff for treatment of these conditions in violation of Plaintiff['s] Eighth amendment right." *Id.* For his relief, plaintiff seeks a preliminary injunction ordering defendants to refrain from denying him a sanction break, an order directing the MDOC to modify plaintiff's sanctions because they violate due process of law and other relief. *Id.*

### II.    Defendants' motion for summary judgment

### A.     Legal standard for summary judgment

Defendants seek summary judgment on the ground that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

3

>   (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
>   (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

>   The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.  Failure to Exhaust

#### 1.  Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA

was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2.     MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II

Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

Defendants summarized plaintiff's history regarding the six grievances appealed at ECF through Step III. Defendants' Brief (ECF No. 24, PageID.144-145). Of these, only two grievances related to the claims alleged in this lawsuit. In ECF-17-05-1640-27B ("1640") (dated May 24, 2017) and ECF-17-06-1767-28A (dated June 4, 2017), directed against ARUS Miseta and RUM Smiley, plaintiff complained that he did not receive a 7-day break from his "loss of privileges" sanctions to which he was entitled after serving the sanction for 30 consecutive days pursuant to MDOC Policy Directive 03.03.105 ("Prisoner Discipline"). PageID.182-183, Grievance 1640 appears to refer to a sanction break not given on May 23, 2017. PageID.183. Grievance 1767 states as of June 4, 2017, plaintiff has been deprived of yard access for 42 days. PageID.188. Grievance 1767 was rejected as duplicative.

Grievance ECF-17-05-1639-15B ("1639") (dated May 25, 2017), directed against ARUS Miseta, involves an unrelated claim that Miseta inappropriately read plaintiff's legal mail before giving it to plaintiff. PageID.177. Finally, three of the grievances did not name any of the defendants in this action. Grievance ECF-17-05-1474-12B ("1474") (dated May 14, 2017) was apparently directed at non-parties Barbara M. Davenport and Brian Majerczyk asking to remove a notation from plaintiff's mental health records that he "brags about how he beats the system." PageID.172. Grievance ECF-17-04-1068-12L ("1068") (dated April 9, 2017) was directed at non-party NP Jennifer R. Dalton for issuing a medical detail order that prevented

6

plaintiff from purchasing over the counter medications at the prison store due to plaintiff overdosing on ibuprofen. PageID.192-193. Finally, Grievance ECF-16-12-3691-12F ("3691") (dated December 2, 2016) was directed at non-party Dr. Davenport for discontinuing a psychotropic medication. PageID.199. Based on this record, defendants contend that defendants Smith, Mucha and Bellinger should be granted summary judgment on all claims and dismissed from this lawsuit.

In his response, plaintiff did not oppose granting summary judgment to defendant Bellinger, but asked that the Court deny summary judgment with respect to defendants Smith and Mucha because they had subjective knowledge of the situation. Response (ECF No. 30); Brief (ECF No. 31). In their reply, defendants pointed out that plaintiff never named defendants Smith or Mucha in a Step I grievance, and that his "subjective knowledge" argument was not sufficient to demonstrate administrative exhaustion. Given the record in this case, The Court took the unusual step of allowing plaintiff to file a sur-reply. See Order (ECF No. 43). In the sur-reply, plaintiff contends (1) that plaintiff can sue both defendants Mucha and Smith because they were aware of the alleged mistreatment, and (2) that plaintiff can sue both Mucha and Smith because he does not need to exhaust a grievance with respect to the content of a policy.

Plaintiff's first argument is without merit, being nothing more than a restatement of his previous contention that it was not necessary to name Mucha and Smith in the grievance.

Plaintiff's second argument also fails. According to plaintiff, he does not need to exhaust a grievance against either defendant Mucha or Smith, because he is contesting the content of a policy. Plaintiff relies on MDOC Policy Directive 03.02.130 ¶ F.1. (eff. July 9, 2007), which states:

> A grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant. If a CFA prisoner has a concern with the

7

content of a policy or procedure, s/he may direct comments to the Warden's Forum as provided in PD 04.01.150 "Prisoner Housing Unit Representatives/Warden's Forum".

Plaintiff's Sur-reply (ECF No. 43, PageID.272).

Plaintiff's complaint alleged that PD 03.03.105 is unconstitutionally ambiguous under the Due Process Clause of the 14th Amendment because it does not explicitly state that how the "30 days" is calculated. PageID.3-4. Plaintiff refers to this claim in Count 1, when he stated that "Plaintiff contests the legality of said policy and said it [sic] vioaltes due process." PageID.11. A First Amendment facial challenge is "no small matter," and would require that plaintiff show either "(1) that there truly are no or at least few circumstances in which the Act would be valid, or (2) that a court cannot sever the unconstitutional textual provisions of the law or enjoin its unconstitutional applications." *Connection Distributing Co. v. Holder*, 557 F.3d 321, 335 (6th Cir.2009) (internal quotation marks and citations omitted). Here, plaintiff contends that the policy directive is unconstitutional because it is too vague to enforce due to the manner in which the 30 days are calculated. Plaintiff provides the following example:

> LOP starts on March 1st, 2017 and runs until March 28th, 2017 – and plantiff has served 27 days of LOP, but on March 30, 2017 plaintiff restarts another strain of LOP and runs until April 10, 201 – and plaintiff has again served 11 more days on LOP for a grand TOTAL of 38 days in totality, but plaintiff did not have any LOP sanctions from March 28, 2017 threw [sic] March 29, 2017 = plaintiff was without sanctions for two days and only therefore was given TWO HOURS outside and thus not eligible for 7 days worth of one hour yard physical activity.

PageID.3.

Plaintiff's facial challenge of the policy directive is without merit. "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Thus, an enactment "which

either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926). Contrary to plaintiff's claim, PD 03.03.105 ¶ QQQ is not void for vagueness. The policy directive makes it clear that the seven-day break is triggered when a prisoner is "deprived of yard for more than 30 consecutive days" (emphasis added). While plaintiff's hypothetical attempts to show that a prisoner served 38-days without a break, his hypothetical is flawed because that prisoner was not deprived of yard for more than 30 *consecutive* days. Accordingly, plaintiff has failed to allege that PD 03.03.105 ¶QQQ is unconstitutionally vague.

In the end, plaintiff's claim fails because he is actually grieving the content of PD 03.03.105 as it was applied to him, i.e., that defendants did not allow a sanction break under that policy directive. As this Court observed in *Oliver v. Parkkila*, No. 2:12-cv-292, 2013 WL 5330208 (W.D. Mich. Sept. 23, 2013), *affirmed* No. 13-2448 (6th Cir. June 10, 2014), prisoners cannot avoid filing grievances under the guise that they are challenging the content of policies:

> Plaintiff also asserts that his November 27, 2009 television deprivation claim should not be dismissed. In support, Plaintiff points to MDOC policy language that states that a grievant may not grieve the content of policy or procedure except as it was specifically applied to the grievant. P.D. 03.02.130(f). Plaintiff appears to argue that he was not allowed to grieve the issue because it concerned the content of a policy or procedure. However, since the issue concerned how the policy or procedure was specifically applied to the grievant, Plaintiff would not have been prevented from grieving the issue. This claim will also be dismissed.

*Oliver*, 2013 WL 5330208 at *2. *See Wayne v. Heyns*, No. 1:13-cv-1308, 2015 WL 1478205 at *8 (W.D. Mich. March 31, 2015) ("[t]o the extent that plaintiff is asserting claims based on the policy directive as it was specifically applied to him, it is pellucid that he was required to exhaust

9

his claims through the MDOC's grievance process before he filed this lawsuit."). Accordingly, plaintiff's claims against defendants Smith, Mucha and Bellinger should be dismissed.

### III.    Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (ECF No. 23) be **GRANTED** and that defendants Eric Smith, Aimee Mucha, and Jack Bellinger be **DISMISSED**.

I further recommend that this case proceed against defendants Patrick Miseta (Count 3) and Kevin Smiley (Count 4) on plaintiff's claims that defendants Miseta and Smiley violated his 8th Amendment rights when they refused to provide him with a sanction break which included adequate time for exercise outdoors.

Dated:  February 11, 2019              /s/ Ray Kent
                                       United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).