UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY CRANE,

               Plaintiff,

v.

ERIC SMITH, *et al.*,

               Defendants.

_____/

Case No. 1:18-cv-227

Hon. Paul L. Maloney

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Timothy Crane, a state prisoner at a Michigan Department of Corrections (MDOC) facility.   This matter is now before the Court on defendants Miseta and Smiley's motion for summary judgment (ECF No. 81).   Defendants' motion is unopposed.[1]

### I.      Plaintiff's Complaint

Plaintiff's claims arose out of incidents occurring in May and June 2017 at the Oaks Correctional Facility (ECF).   Plaintiff sued five MDOC employees in their individual and official capacities: Acting Deputy Warden Eric Smith, Assistant Residential Unit Supervisor (ARUS) Patrick Miseta, Residential Unit Manager (RUM) Kevin Smiley, Psychologist Aimee Mucha, and Registered Nurse (RN) Jack Bellinger.   Compl. (ECF No. 1, PageID.1-2).   Plaintiff alleged that defendants Smith, Miseta and Smiley denied him sanction breaks and that defendants Mucha and Bellinger were deliberately indifferent to his serious medical needs.

---

[1]At plaintiff's request, the Court extended the due date to file his response to defendants' motion to December 16, 2016.   *See* Order (ECF No. 86).   Plaintiff, however, has never filed a response.

1

### A.   Sanction Breaks

In Counts 1 through 4, plaintiff alleged that defendants Smith, Miseta and Smiley

failed to provide him with a sanction break every 30 days pursuant to MDOC Policy Directive

03.03.105 ("Prisoner Discipline") which provides that:

> A prisoner serving a sanction of detention, toplock, loss of privileges, or any
> combination of these sanctions, shall not be deprived of yard for more than 30
> consecutive days without being provided a seven-day break during which the
> prisoner shall be given the opportunity for yard consistent with his/her status (i.e.,
> one hour per day in general population; one hour per day, five days per week, in
> segregation). However, yard privileges for all segregation prisoners are subject to
> restriction by written order of the Warden or Deputy Warden as set forth in PD
> 04.05.120 "Segregation Standards".

PD 03.03.105 ¶ QQQ (eff. 04/09/12).[2]

In Count 1, plaintiff claims that Acting Deputy Warden Smith violated his 14th

Amendment due process rights by failing to correct or modify his "illegally entered" sanction dates

to allow him an adequate amount of outside exercise time under MDOC Policy Directive

03.03.105.  Plaintiff alleged that both the policy and defendant Smith's actions violated his due

process rights.  PageID.11.  In Count 2, plaintiff alleged that defendant Smith inflicted cruel and

unusual punishment in violation of the 8th Amendment and violated his due process rights under

the 14th Amendment because he knew that the disciplinary sanctions caused plaintiff physical and

mental injury.  *Id*.  In Count 3, plaintiff alleged that defendant ARUS Miseta engaged in cruel

and unusual punishment in violation of the 8th Amendment "where defendant refused to provide

plaintiff with [adequate] time for exercise outdoors for several months. (sanction break)[.]"  *Id*.

In Count 4, plaintiff alleged that defendant RUM Smiley engaged in cruel and unusual punishment

---

[2] The Court notes that PD 03.03.105 was revised as of July 1, 2018.

in violation of the 8th Amendment "where defendant refused to provide plaintiff with [adequate] time for exercise outdoors for several months via sanction break."  *Id.*

### B.    Medical treatment

In Count 5, plaintiff alleged that defendant psychologist Mucha acted with deliberate indifference to plaintiff's serious mental health needs in violation of his 8th Amendment rights, "where she had knowledge of the risk Plaintiff posed to himself and yet failed to take reasonable precautions to prevent plaintiff from attempting suicide multiple times" and failed to report "the ongoing abuse Plaintiff was enduring and reporting to her concerning the lack of outside physical activity."  *Id.* at PageID.12.  Finally, in Count 6, plaintiff alleged that RN Bellinger "failed to treat Plaintiff's high blood pressure, [muscular] dystrophy, [migraines], and failed to refer plaintiff for treatment of these conditions in violation of Plaintiff['s] Eighth amendment right."  *Id.*  For his relief, plaintiff seeks a preliminary injunction ordering defendants to refrain from denying him a sanction break, an order directing the MDOC to modify plaintiff's sanctions because they violate due process of law, and other relief.  *Id.*

The Court dismissed plaintiff's claims against defendants Smith, Mucha, and Bellinger because he failed to exhaust any grievances against those three defendants.  *See* Order adopting R&R (ECF No. 53).  The Court ordered the case to proceed "against Defendants Patrick Miseta (Count 3) and Kevin Smiley (Count 4) on Plaintiff's claims that Defendants Miseta and Smiley violated his 8th Amendment rights when they refused to provide him with a sanction break which included adequate time for exercise outdoors."  *Id.*  Defendants Miseta and Smiley seek summary judgment as to Counts 3 and 4.

## II.     Defendants' motion for summary judgment

## A.     Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).   "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."   *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483,

4

486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992).   However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact.   *Id*. at 405.

### III.   Eighth Amendment claim

### A.   Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law."   *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004).   To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law.   *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. The Supreme Court has held that "the unnecessary and wanton infliction of pain .   .   .   constitutes cruel and unusual punishment forbidden by the Eighth Amendment."   *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).   A viable Eighth Amendment claim consists of an objective and a subjective component.   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   A court considering a prisoner's Eighth Amendment claim must ask both if the

alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind.   *Hudson*, 503 U.S. at 8.

To demonstrate the objective component, the plaintiff must demonstrate that he has been deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).   The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." Id. at 348 (citation omitted).   The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."   *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (quoting *Rhodes*, 452 U.S. at 346).   However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."   *Ivey*, 832 F.2d at 954.   "[R]outine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (internal quotation marks omitted).   As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.   *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."   *Farmer*, 511 U.S. at 837.   "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."   *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

B.      Discussion

1.      ARUS Miseta

In Count 3, plaintiff alleged that defendant ARUS Miseta, the supervisor of Protective Custody Unit #1 at ECF, engaged in cruel and unusual punishment in violation of the 8th Amendment because Miseta refused to provide plaintiff with sanction breaks as required by the MDOC policy directives.   PageID.2, 5, 11.   The lack of sanction breaks deprived plaintiff of adequate time for outdoor exercise.   *Id*.   Plaintiff alleged that he was on continuous sanctions involving LOP [loss of privileges] for three years prior to filing this lawsuit.   PageID.3.   Plaintiff alleged that inmates on LOP for 30 consecutive days are required to be provided with a seven-day sanction break, which includes access to the yard for one hour per day to exercise and socialize with other inmates.   *Id*.   Plaintiff alleged on May 18, 2017, plaintiff spoke to ARUS Miseta about having a "full and fair" seven-day sanction break.   PageID.5.   ARUS Miseta responded that plaintiff was not eligible for a sanction break but that he should kite RUM Smiley.   *Id*.   On May 22, 2018, plaintiff alleged that he spoke with non-party Sgt. Taylor, who "assured Plaintiff that he'd speak to unit staff about getting me out more, as well as email the ARUS Miseta and RUM Smiley about the issue."   *Id*.

The gist of plaintiff's claim is that the MDOC did not properly calculate the 30-day blocks of sanctions, and that this deprived him of the seven-day break periods.   PageID.3.   Plaintiff points out that he has many "strains" of LOP which he is required to serve.   *Id*.   By "strains" of LOP, plaintiff is referring to the scores of individual LOP sanctions which he must serve due to his 140 separate misconduct violations committed between August 15, 2011 and May 1, 2017. *See* MDOC Misconduct History Report (ECF No. 82-5, PageID.537-541).   Plaintiff

7

apparently contends that his accrued sanctions should be served consecutively, so that over the next few years he can alternate between a 30-day block of sanctions followed by seven-day break period.   *See* PageID.3.[3]

ARUS Miseta executed an affidavit which addressed plaintiff's allegations. During the relevant time period, ARUS Miseta served as a prison counselor (PC) at ECF.   Miseta Aff. (ECF No. 82-7, PageID.547).   Miseta stated that "[f]or much of his confinement, prisoner Crane locked in the segregation unit," and that "[w]hen prisoner Crane was not in segregation, he locked in the protection unit."   *Id*.   ARUS Miseta explained his interactions with plaintiff as follows:

> 6.      The protection unit at Oaks is one of only two protection units in the state. The unit houses prisoners that have been granted protection for reasons including safety concerns, such as gang violence, and/or for behavioral reasons. Prisoners share a cell with a bunkmate and are provided meals, programs, medical care, and yard time, within the protection unit. Prisoners with protected status are given the same privileges as general population prisoners, including yard time, programs, and opportunity for prisoner interaction. Prisoner Crane was granted protection and placed in this unit at Oaks.
>
> 7.      In his Complaint, prisoner Crane alleges I spoke with him on May 18, 2017, regarding his request for a seven-day sanction break and claims I instructed him to kite Resident Unit Manager, Kevin Smiley. I do not recall having this conversation with prisoner Crane on that date.
>
> 8.      Prisoner sanctions are documented in a restriction report found in a computer database called OMNI. Depending on the type of misconduct, the Hearing Officer or Investigator that presides over a prisoner's misconduct review will document the dates a prisoner will serve his or her sanctions in the OMNI database. Sanction breaks are also entered into OMNI. *Sanction breaks are provided once a prisoner serves a sanction for 30 consecutive days. Sanction breaks are not provided if there is a gap in the beginning and end dates of a sanction in OMNI.*

---

[3] While plaintiff claims that the MDOC's interpretation of PD 03.03.105 ¶ QQQ also violates his due process rights, this claim is not before the Court.  The Court dismissed this claim, which plaintiff alleged in Count One against former defendant Deputy Warden Smith.   *See* PageID.3-5, 11; Order (ECF No. 53).

9.      At the beginning of a morning shift, the regular custody officer in a housing unit is responsible for printing the OMNI restriction report of the prisoners in that unit. The officer will then provide sanction breaks to eligible prisoners as required by the report.

10.      As PC I typically do not document or review what dates prisoners serving sanctions will receive a sanction break. I will review the status of a prisoner's restrictions in OMNI if I receive a kite from a prisoner concerning his sanction status. When a prisoner contacts me regarding his status, I then review OMNI to determine whether he is entitled to a break. If the prisoner is, I will notify my supervisor, the Resident Unit Manager, regarding the break.

11.      *Based on my review of prisoner Crane's OMNI restriction report, prisoner Crane was not entitled to a sanction break under Policy Directive 03.03.105 QQQ during the months of May and June 2017. This is because prisoner Crane did not serve 30 consecutive days of sanctions. (see attached report) [ECF No. 82-8].* Prisoner Crane was provided with sanction breaks in accordance with policy.

12.      In his Complaint, prisoner Crane also alleges I stated, "I don't care if you kill yourself; next time you'll learn not to catch tickets, you've got nothing coming from me so kite the RUM-hopefully he'll be sympathetic to your bullshit."   These allegations are false, I did not make any unprofessional statements to prisoner Crane.

13.      I maintained a positive rapport with prisoner Crane based on my near daily interactions with him.

14.      Prisoner Crane never told me the reason he felt suicidal was because he did not receive sanction breaks. Prisoner Crane never spoke with me about the conditions he was confined in. Prisoner Crane never told me he had physical health issues from not getting adequate exercise.

Miseta Aff. at PageID.547-549 (emphasis added).

Defendants point out that during May and June 2017, plaintiff had normal privileges with yard time in between the dates he served his misconduct sanctions.   *See* Defendants' Brief at PageID.466-467.   Those dates of normal privileges were as follows: two

days (May 1st-May 3rd)[4]; four days (May 11th-May 15th); two days (June 13th-June 15th); four days (June 23rd-June 27th); and one day (June 30th-July 1st).   *See Id*.; MDOC Offender Restriction Filter Report (ECF No. 82-8, PageID.556).   Based on this record, plaintiff did not serve a 30-day period of sanctions during May and June which would trigger a seven-day break. There is no basis for plaintiff's claim that defendant ARUS Miseta engaged in cruel and unusual punishment because he violated the seven-day break provision as set forth in PD 03.03.105 ¶ QQQ. Accordingly, defendant Miseta's motion for summary judgment should be granted.[5]

### 2.     RUM Smiley

Similarly, in Count 4, plaintiff alleged that defendant RUM Smiley engaged in cruel and unusual punishment in violation of the 8th Amendment because Smiley refused to provide plaintiff with sanction breaks as required by the MDOC policy directives.   PageID.11.   In his complaint, plaintiff alleged that he sent RUM Smiley a kite on May 18, 2017; however, plaintiff did not specify the content of the kite. PageID.5. On May 22, 2018, plaintiff alleged that he spoke with non-party Sgt. Taylor, who "assured Plaintiff that he'd speak to unit staff about getting me out more, as well as email the ARUS Miseta and RUM Smiley about the issue."   *Id*. Then, at an unspecified date, plaintiff told Smiley that he was being allowed outside activity for only a few hours a month, that he was not given a seven-day sanction break "due to how my sanctions are

---

[4] According to defendants "Dates are calculated including the start date, but not including the end date. Sanctions begin at 6:00 a.m. on the date they begin. (Defs Ex 2, ¶ KKK, p. 12)."   Defendants' Brief at PageID.467.
[5] Even if ARUS Miseta had denied plaintiff a seven-day break in violation of the MDOC policy directive, a defendant's alleged failure to comply with an administrative rule or prison policy does not, in and of itself, rise to the level of a constitutional violation.   *Mazur v. Howes*, No. 1:13-cv-1206, 2014 WL 1028928 at *4 (W.D. Mich. March 14, 2014). "Section 1983 does not provide redress for violations of a state law or prison policies."   *Bradford v. Gerth*, No. 2:07-cv-225, 2009 WL 1406675 at *2 (W.D. Mich. May 19, 2009), citing *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.1995) (while states are free to enact laws that are more protective of individual rights than the United States Constitution, "a mere violation of such a state law will not establish a proper claim under § 1983").

entered for me to serve," and that he has been extremely depressed and suicidal as a result of

solitary confinement. PageID.6.    According to plaintiff, Smiley "laughed and said 'kite the ARUS

about that Mr. Crane, he can help you.'"    *Id*.

　　　　　　RUM Smiley addressed plaintiff's allegations in his affidavit.    At all relevant times

in the lawsuit, Smiley was employed as an RUM at ECF.    Smiley Aff. (ECF No. 87-1,

PageID.627).    Smiley further stated as follows:

> 4.    In his Complaint, prisoner Crane alleges he submitted a kite to my mailbox
> on May 18, 2017. I did not receive a kite from prisoner Crane on or about May 18,
> 2017.
>
> 5.    In his Complaint, prisoner Crane alleges he spoke with Sergeant Taylor
> regarding his sanction breaks and the effects on his physical and mental health. I
> have reviewed my email archives and have no email from Sergeant Taylor
> regarding prisoner Crane.
>
> 6.    In his Complaint, prisoner Crane alleges he told me he felt extremely
> depressed and suicidal as a result of not having outside activity. He states I laughed
> at him and told him to kite the Assistant Resident Unit Supervisor (ARUS). I do
> not remember having any conversation with prisoner Crane about receiving a
> sanction break. I did not laugh at prisoner Crane. I deal with prisoners in a
> professional manner.
>
> 7.    Prisoners are first to address any issues they have with the Prison Counselor
> or Assistant Resident Unit Supervisor and then may address such issues with me
> should the issue not be resolved.
>
> 8.    I did not have any conversations with Prison Counselor Miseta regarding
> prisoner Crane's sanction breaks.
>
> 9.    Prisoner Crane never spoke with me about the conditions he was confined
> in. Prisoner Crane never told me he had physical or mental health issues from not
> getting adequate exercise.

Smiley Aff. at PageID.627-628.

　　　　　　For the same reasons as discussed in § III.B.1., *supra*, there is no basis for plaintiff's

claim that defendant RUM Smiley engaged in cruel and unusual punishment because he violated

PD 03.03.105 ¶ QQQ.   Accordingly, defendant Smiley's motion for summary judgment should be granted.

### IV.    Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (ECF No. 81) be **GRANTED** and that this action be **TERMINATED**.

Dated:   June 9, 2020                                      /s/ Ray Kent
                                                          United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).